**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO
Judge Nina Y. Wang**

Civil Action No. 22-cv-02470-NYW-NRN

DAVERILLE SHER, and
DAVID BARCH,

      Plaintiffs,

v.

AMICA MUTUAL INSURANCE COMPANY,

      Defendant.

---

## ORDER DENYING MOTION FOR RECONSIDERATION

---

This matter is before the Court on Defendant's Motion for Reconsideration of the Court's March 7, 2024 Opinion and Order on the Plaintiffs' Motion for Partial Summary Judgment (the "Motion for Reconsideration" or "Motion"), filed on August 20, 2024. [Doc. 86]. The Motion is fully briefed. [Doc. 90; Doc. 93]. The Court finds that oral argument would not materially assist in the resolution of this Motion. For the reasons set forth in this Order, the Motion for Reconsideration is respectfully **DENIED**.

### BACKGROUND

The factual background of this case is set forth in this Court's March 7, 2024 Memorandum Opinion and Order (the "Order"), *see* [Doc. 66], and the Court does not repeat it here. This is an insurance coverage dispute arising out of flooding on the property of Plaintiffs Daverille Sher and David Barch (collectively, "Plaintiffs") in Durango, Colorado, causing damage to their home and its contents.

Plaintiffs initiated this action against Defendant Amica Mutual Insurance Company ("Defendant" or "Amica") in September 2022 by filing a Complaint and Jury Demand. [Doc. 1].  In their First Amended Complaint and Jury Demand (the "Amended Complaint"), Plaintiffs assert claims for breach of contract, unreasonable delay and/or denial of insurance benefits in violation of Colo. Rev. Stat. §§ 10-3-1115 and 10-3-1116, and common law bad faith arising from an insurance claim involving water intrusion that allegedly caused damage to Plaintiffs' Durango residence (the "Home").  [Doc. 25 at ¶¶ 117–38].

After discovery closed on June 30, 2023, *see* [Doc. 17 at 14], Plaintiffs filed a Motion for Partial Summary Judgment, [Doc. 48].  All Parties agreed that genuine factual disputes exist as to whether the Home and its contents were damaged by water that overflowed a cistern on the property.  [*Id.* at 12; Doc. 58 at 5].  To narrow the issues for trial, Plaintiffs asked the Court to declare as a matter of law that—if Plaintiffs prove damages under their theory of causation at trial—the damage would constitute direct physical loss covered by Plaintiffs' insurance policy with Amica (the "Policy"), notwithstanding the Policy's coverage exclusions.  *See generally* [Doc. 48].[1]

In moving for partial summary judgment, Plaintiffs explained that coverage for damage caused by water that reached the Home from the cistern was not barred by the Policy's water exclusion because an exception to the water exclusion (the "Exception")

---

[1] Plaintiffs also moved for summary judgment as to coverage with respect to damage caused by water leaking from an irrigation system on the property and in-floor hydronic loops inside the Home, [Doc. 48 at 19–20], and water intentionally discharged on the property by another, [*id.* at 20–21].  Because the only theory of causation addressed in the Motion for Partial Summary Judgment that will be presented at trial is that of the overflowing cistern, the Court limits its analysis accordingly.

applies.  [*Id.* at 16–18].  The Policy's water exclusion excludes coverage for (1) losses caused by "[m]old, fungus or wet rot," and (2) losses caused by "[w]ear and tear, marring, [or] deterioration."  [Doc. 48-1 at 33].  The Exception, however, states that the water exclusion does not apply to losses caused by mold, fungus or wet rot that "result[] from the accidental discharge or overflow of water . . . from within . . . [a] plumbing . . . system." [*Id.*].  In addition, the Exception provides that the water exclusion does not apply to losses caused by wear and tear, marring, or deterioration that "result[] from an accidental discharge or overflow of water . . . from within a . . . [p]lumbing . . . system."  [*Id.* at 34].

Plaintiffs asserted that the Policy unambiguously provides coverage for direct physical loss to the Home and its contents due to overflow from the cistern pursuant to the Exception because the cistern is part of the "plumbing system" for the Home.  [Doc. 48 at 18].  In support, Plaintiffs pointed to evidence that (a) "[t]he cistern receives water from the well and then pumps that water into the Home on Demand," (b) "[t]he cistern is connected to the Home via an underground pipe that enters the boiler room through the slab-on-grade," and (c) "[f]rom the boiler room, water is pumped throughout the Home." [*Id.* (citing [*id.* at ¶¶ 8–13])].  According to Plaintiffs, these features establish that the cistern is "part of the system" that "distribute[s] water throughout the Home," consistent with the dictionary definition of "plumbing."  [*Id.*]; *see also Plumbing*, Merriam-Webster Online Dictionary, https://www.merriamwebster.com/dictionary/plumbing (last visited Oct. 16, 2024) ("the apparatus (such as pipes and fixtures) concerned in the distribution and use of water in a building").

Amica did not challenge or dispute any of the foregoing arguments in its Response. *See generally* [Doc. 58].  Indeed, Amica expressly agreed that Plaintiffs' damages caused by an overflow of the cistern, if proven, would be covered under the Policy.  [*Id.* at 5].

On March 7, 2024, the Court granted summary judgment as to the coverage issues raised by Plaintiffs.  [Doc. 66].  The Court's Order concludes,

> for the reasons outlined by Plaintiffs in their Motion, that Plaintiffs are entitled to partial summary judgment on the issues of the Policy's coverage raised in their Motion, and concludes that, should Plaintiffs establish at trial that the Home and its contents suffered direct physical damage from water that overflowed the cistern or leaked from the outdoor irrigation lines or in-floor radiant heat system, the Policy covers that damage, notwithstanding the Policy's exclusion for vandalism, which does not apply to the facts of this case.

[*Id.* at 20].

On April 2, 2024, the Court set this case for a five-day jury trial to begin on October 28, 2024, and set a Final Pretrial Conference for August 23, 2024.  [Doc. 68].  In its Trial Preparation Order, the Court set July 12, 2024 as the deadline to file motions in limine. [Doc. 69 at 5–6].  The Court also ordered the Parties to submit, inter alia, proposed jury instructions and a proposed verdict form by August 9, 2024, and a proposed Final Pretrial Order and proposed witness lists, exhibit lists, and voir dire by August 16, 2024.  [*Id.* at 2–5].

More than five months after the Court's Order—after all of the foregoing pretrial preparation deadlines and just three days before the Final Pretrial Conference in this matter—Amica filed the instant Motion for Reconsideration, arguing that "there is a risk of clear error and/or manifest injustice if the March 7, 2024 Opinion and Order is not reconsidered and vacated" because the Policy was "erroneously applied as a matter of law."  [Doc. 86 at 13].

## LEGAL STANDARD

The Federal Rules of Civil Procedure do not expressly contemplate motions for reconsideration.  *See Hatfield v. Bd. of Cnty. Comm'rs*, 52 F.3d 858, 861 (10th Cir. 1995).  As a general principle, courts grant motions to reconsider where there is "(1) an intervening change in the controlling law, (2) new evidence previously unavailable, [or] (3) the need to correct clear error or prevent manifest injustice."  *Servants of the Paraclete v. Does*, 204 F.3d 1005, 1012 (10th Cir. 2000).  "Motions to reconsider are generally an inappropriate vehicle to advance 'new arguments or supporting facts which were available at the time of the original motion.'"  *Spring Creek Expl. & Prod. Co., LLC v. Hess Bakken Inv. II, LLC*, No. 14-cv-00134-PAB-KMT, 2015 WL 3542699, at *2 (D. Colo. June 5, 2015) (quoting *Servants of the Paraclete*, 204 F.3d at 1012).  And "[t]he Tenth Circuit has made it abundantly clear that a motion for reconsideration is not a vehicle for a losing party to revisit issues already addressed."  *Seabron v. Am. Fam. Mut. Ins. Co.*, No. 11-cv-01096-WJM-KMT, 2012 WL 3028224, at *1 (D. Colo. July 24, 2012) (citing *Servants of the Paraclete*, 204 F.3d at 1012).  "[T]he decision to grant reconsideration is committed to the sound discretion of the district court."  *Brumark Corp. v. Samson Res. Corp.*, 57 F.3d 941, 944 (10th Cir. 1995).

## ANALYSIS

Amica bases its request for reconsideration solely on the asserted need to correct clear error or prevent manifest injustice.  *See generally* [Doc. 86].  Amica contends that the Court's Order was clearly erroneous in two ways—namely, this Court reached the wrong conclusion by (1) misinterpreting and misapplying unambiguous terms of the Policy; and (2) improperly construing the Parties' legal arguments as binding judicial

admissions.  *See generally* [*id.*; Doc. 93].  In response, Plaintiffs argue that Amica merely raises arguments that it could have raised in its Response to the Motion for Partial Summary Judgment, [Doc. 90 at 15]; improperly mischaracterizes matters of undisputed fact as matters of law, [*id.* at 10–11]; and fails to identify any error in the Court's understanding of Amica's position or application of controlling law, [*id.* at 11–15].  Plaintiffs also assert that Amica's Motion is untimely and unduly prejudicial.  [*Id.* at 15–16].

The Court has carefully analyzed the instant Motion, its Order granting partial summary judgment, the briefing on Plaintiffs' underlying Motion for Partial Summary Judgment, and the Policy and specific terms at issue.  Based on its analysis, the Court finds that Amica seeks to revisit issues already addressed by the Court and raise new arguments that it could have, but did not, raise in its Response.  For the reasons below, the Court concludes that its holdings as to coverage under the Policy were not clearly erroneous and finds that reconsideration is not warranted.  *See, e.g.*, *Cont'l W. Ins. Co. v. Shay Const., Inc.*, 805 F. Supp. 2d 1125, 1133–34 (D. Colo. 2011) (denying motion to reconsider order granting summary judgment on policy coverage issues because the defendants failed to establish clear error).

## I.      Amica's Policy Coverage and Interpretation Arguments

First, Amica claims that the Court must reconsider its ruling "to correct clear error or prevent manifest injustice stemming from the erroneous application of the terms of the [Policy]."  [Doc. 86 at 9].  These new arguments about the Policy's coverage and the proper interpretation of "plumbing system," *see* [*id.* at 10–11], which Amica could have raised in its Response but did not, do not convince the Court that reconsideration is warranted.

In moving for summary judgment, Plaintiffs specifically asserted that the Exception "unambiguously provides coverage" for damages caused by "water that overflowed the cistern."  [Doc. 48 at 18].  Plaintiffs argued that the undisputed features of the cistern establish that it is "part of the system" that "distribute[s] water throughout the Home," consistent with the Merriam-Webster Dictionary's definition of "plumbing."  [*Id.*].

Amica did not counter these assertions in its Response, either with arguments that the Policy unambiguously precludes coverage, or by identifying any ambiguity in the terms of the Policy.  *See generally* [Doc. 58].  Instead, Amica repeatedly "agree[d] that the Policy covers direct physical loss caused by water that overflowed from a cistern." [*Id.* at 5 (capitalization altered)]; *see also* [*id.* at 8].  Now, for the very first time, Amica argues that coverage "is barred under the plain and unambiguous terms" of the Policy, [Doc. 86 at 2], because "the cistern is *not* a 'plumbing system,' and the water exclusion applies," [*id.* at 13 (emphasis added)].

The Court need not address Amica's argument that coverage for loss caused by water from the cistern is excluded under the Policy because Amica failed to raise this argument in response to Plaintiffs' Motion for Partial Summary Judgment.  As previously mentioned, it is inappropriate to seek reconsideration based on "arguments that could have been raised in prior briefing."  *Servants of Paraclete*, 204 F.3d at 1012.

## II.   Errors Based on Judicial "Admissions"

Next, Amica claims that the Court must reconsider its Order because it was "based upon the Plaintiffs' erroneous argument that purported admissions of propositions of law . . . are binding."  [Doc. 86 at 1].  The Court finds several flaws in Amica's argument.

**First,** Amica's "judicial admissions" argument is the flip side of the same coin addressed above.  Amica argues that—"regardless of any purported 'admission'" Amica previously made regarding the interpretation and application of the Policy, [*id.* at 2]—the Court must reconsider its ruling because Amica's previous legal positions are "not subject to judicial admission" and, therefore, are not "binding," [*id.* at 1–2].  Implicit in its argument that it should not be bound by "purported admissions of propositions of law" is the fact that Amica now seeks to advance a legal position contrary to the coverage position expressly stated in its Response brief.  Fundamentally, Amica asserts that it is legal error to bind Amica to the coverage position it unequivocally conceded in its Response.  Insofar as Amica attempts to relitigate "issues already addressed," the Court finds that reconsideration on this basis is not warranted.  *See Servants of Paraclete*, 204 F.3d at 1012.

**Second,** as set forth more fully below, the Court respectfully disagrees with Amica's assertion that the Court's Order was "based upon the Plaintiffs' erroneous argument that purported admissions of propositions of law are binding."  [Doc. 93 at 3].  Plaintiffs did not make that argument.  *See* [Doc. 48; Doc. 59].[2]

**Third,** Amica fails to specifically identify any of the "propositions of law" it claims the Court "improperly construed as judicial admissions," much less any portion of the

---

[2] Indeed, Plaintiffs treated Amica's admissions of fact distinct from Amica's legal concession regarding coverage.  *See, e.g.*, [Doc. 59 at 4–5 (asserting that "Defendant has admitted all facts material to this first coverage determination" and citing to the Parties' respective statements of undisputed facts to identify the "admissions"); *id.* at 4 (asserting that Amica "conceded that Plaintiffs are entitled to entry of partial summary judgment in their favor that the Policy covers the claimed physical damage to the Home and personal property contents if caused by water that overflowed the cistern"); *id.* at 5 n.2 (expressly referring to coverage as a conceded issue)].

Court's Order so construing them.  [Doc. 93 at 1].  This Court declines to craft arguments on behalf of Amica, which has been represented by able counsel since the inception of this action.  *See United States v. Davis*, 622 F. App'x 758, 759 (10th Cir. 2015) ("[I]t is not this court's duty, after all, to make arguments for a litigant that he has not made for himself."); *Phillips v. Hillcrest Med. Ctr.*, 244 F.3d 790, 800 n.10 (10th Cir. 2001) (observing that a court has no obligation to make arguments or perform research on behalf of litigants).[3]

**Fourth,** even if it was properly supported, Amica's fleeting "judicial admissions" argument is misplaced.  In *Guidry v. Sheet Metal Workers International Association, Local No. 9*, 10 F.3d 700 (10th Cir. 1993), *abrogated by Estate of Cummings v. Community Health Systems, Inc.*, 881 F.3d 793 (10th Cir. 2018), the only published opinion cited by Amica, the appellant cited the doctrine of judicial admissions to support his claim that the other party conceded a legal issue at oral argument.  *Id.* at 715–16.  The United States Court of Appeals for the Tenth Circuit ("Tenth Circuit") held that "the doctrine of judicial admission [was] not applicable" and, for several reasons, declined to consider counsel's statement at oral argument a "bind[ing]" judicial admission.  *Id.* at 716.  The *Guidry* court also found that, because the "matter admitted was a proposition of law, the argument was better "characterized as asserting the doctrine of judicial estoppel."  *Id.*[4]

---

[3] Inexplicably, Amica's Motion for Reconsideration relies almost exclusively on citations to Plaintiffs' Complaint.  [Doc. 86].  And despite seeking reconsideration on grounds that the Order contains clear legal error, Amica's only citation to the Court's Order quotes its conclusion.  [*Id.* at 3].  Moreover, Amica's Motion does not contain a single citation to the Motion for Partial Summary Judgment or its Response thereto.  *See generally* [*id.*].

[4] Because the Tenth Circuit did not recognize the doctrine of judicial estoppel at the time *Guidry* was decided (over 30 years ago), the court mentioned the doctrine "only to highlight the inapplicability of the judicial admission doctrine." *Guidry*, 10 F.3d at 716.

Judicial estoppel is an equitable doctrine "designed to 'protect the integrity of the judicial process' by preventing parties from changing their legal positions in the same case based on the 'the exigencies of the moment.'"   *Stender v. Archstone-Smith Operating Tr.*, 910 F.3d 1107, 1115 (10th Cir. 2018) (quoting *New Hampshire v. Maine*, 532 U.S. 742, 749–50 (2001)).  In deciding whether to find judicial estoppel, courts in the Tenth Circuit may consider three factors:  (1) "whether a party is now asserting a position that is clearly inconsistent with its prior position"; (2) "whether that party successfully convinced a court to accept the earlier position"; and (3) "whether it would be unfair to allow that party to change its position."  *Id.* (quotation omitted).

Here, Amica's new coverage position is directly contrary to the coverage position advanced by Plaintiffs' Motion for Summary Judgment, expressly conceded by Amica in its Response, and ultimately adopted by the Court's Order.[5]  Amica was not precluded from raising the coverage issue in Response to Plaintiffs' Motion for Partial Summary Judgment, or in an earlier motion to dismiss.  It simply chose not to challenge Plaintiffs' interpretation.  After it effectively invited the Court "to accept one interpretation," and "having benefited from [Plaintiffs' reliance on] that interpretation" over the last six months, Amica "now urges an inconsistent interpretation to gain an additional advantage at [Plaintiffs'] expense" in the weeks before trial.  *New Hampshire*, 532 U.S. at 755.

---

[5] Indeed, Amica's arguments in the Motion for Reconsideration adopt a position expressly contrary to representations made in Amica's Response to the Motion for Partial Summary Judgment.  *Compare, e.g.*, [Doc. 58 at 5 ("Defendant agrees that the Policy covers direct physical loss caused by water that overflowed from a cistern." (capitalization altered))], *and* [*id.* at 8 ("Amica agrees that any damage to the home and or its contents would be covered . . . if the alleged damage resulted from a malfunction with the cistern.")], *with* [Doc. 86 at 9 ("Even if the Plaintiffs prove direct physical damage to their property, coverage is nonetheless excluded under the policy if the loss is caused by the cistern." (capitalization altered))].

Ultimately, the Court need not and does not exercise its discretion to apply judicial estoppel at this juncture, but the doctrine's potential application to Amica's new coverage position highlights why Amica's "judicial admissions" argument fails to demonstrate any clear error.  While "it is true that a court is not bound by the parties' stipulations regarding questions of law," the availability of equitable doctrines like judicial estoppel demonstrate that the inverse is not necessarily true.  *Cf. Preventive Energy Sols., L.L.C. v. nCap Ventures 5, L.L.C.*, No. 21-4099, 2023 WL 7148434, at *7 (10th Cir. Oct. 31, 2023) (applying equitable "invited error doctrine" to conclude that a party who invited the district court to accept its stipulations regarding the enforceability of a contract, i.e., a legal question, waived any argument that the lower court erred in adopting the stipulation). Courts can and do exercise discretion to bind parties to their legal positions.  Amica's improper, and repeatedly untimely,[6] attempts to revisit its prior legal strategies does not warrant reconsideration.

## III.    The Court's Interpretation and Application of the Policy

Finally, the Court finds no clear error in its interpretation of the Policy or in its application of the Policy to the undisputed facts in the record.  As Plaintiffs point out in their Response, the Court's legal determination regarding coverage turned on the unambiguous language of the Policy (as a matter of law) and the undisputed facts regarding the features and operation of the Home's plumbing system (matters of fact). [Doc. 90 at 11 (citing [Doc. 66 at 15–18])]; *see also Thompson v. Md. Cas. Co.*, 84 P.3d

---

[6] The Court also denied Defendant's late attempt to argue spoliation of the irrigation lines, raised for the first time in Amica's Motion in Limine, *see* [Doc. 73], because neither Party had ever identified the irrigation lines as the cause of the loss at issue, *see* [Doc. 89].

496, 501 (Colo. 2004) (interpretation of the contractual terms of an insurance policy is a matter of law properly decided in a motion for summary judgment).[7]

Admittedly, the Court did not explicitly state that each term of the Policy set forth in Plaintiffs' Motion for Partial Summary Judgment was unambiguous.  But that was because Amica raised no argument to the contrary in its Response.  Nevertheless, the Court takes this opportunity to make explicit, as is implicit in its Order, its finding that the cistern unambiguously falls within the meaning of "plumbing system" under the Exception as a matter of law.  *Cf. Evans v. Hartford Life Ins. Co.*, 704 F.2d 1177, 1179 (10th Cir. 1983) (notwithstanding fact that the trial court did not explicitly state its finding that insurance policy was unambiguous, this finding was implicit in its conclusion regarding coverage for the plaintiff); *Elec. Distribs., Inc. v. SFR, Inc.*, 166 F.3d 1074, 1082 (10th Cir. 1999) (trial court's finding as to interpretation of contract was implicit in its conclusions at summary judgment).

The Exception unambiguously applies to the cistern in this case.  Because the term "plumbing system" is undefined in the Policy, the Court interprets the term "according to its plain meaning." *Renfandt v. N.Y. Life Ins. Co.*, 419 P.3d 576, 580 (Colo. 2018).  Based on applicable dictionary definitions, the plain meaning of "plumbing system" is the group of interconnected objects designed to distribute water for use in the Home. *See Plumbing*, Merriam-Webster          Online          Dictionary,          https://www.merriam-webster.com/dictionary/plumbing (last accessed Oct. 16, 2024) (defining "plumbing" as "the apparatus (such as pipes and fixtures) concerned in the distribution and use of water

---

[7] "[T]he Court analyzes motions to reconsider by picking up where it left off in the prior ruling—not by starting anew." *XTO Energy, Inc. v. ATD, LLC*, 189 F.  Supp. 3d 1174, 1192 (D.N.M. 2016).

in a building"); *System*, Merriam-Webster Online Dictionary, https://www.merriam-webster.com/dictionary/system (last accessed Oct. 16, 2024) (defining "system" as "a regularly interacting or interdependent group of items forming a unified whole" and "a group of devices . . . forming a network especially for distributing something or serving a common purpose"); *see also Owners Ins. Co. v. Dakota Station II Condo. Ass'n, Inc.*, 443 P.3d 47, 51 (Colo. 2019) ("When determining the plain and ordinary meaning of words, [the court] may consider definitions in a recognized dictionary.") (quotation omitted). Therefore, a plumbing system is the interconnected group of items designed to distribute water to the Home.

Here, the undisputed facts established that all water used in the Home comes from a private well on the property, [Doc. 48 at ¶ 9; Doc. 58 at ¶ 9; Doc. 48-3 at ¶ 8], which is then pumped into to an underground cistern for storage until the Home needs water, [Doc. 48 at ¶ 10; Doc. 58 at ¶ 10; Doc. 48-3 at ¶¶ 9, 12–14]. When the Home requires water, the cistern pumps water into the Home's boiler room via underground piping. [Doc. 48 at ¶ 11; Doc. 58 at ¶ 11; Doc. 48-3 at ¶¶ 15–17]. Thus, the cistern provides water to the Home as part of a group of interconnected objects designed to distribute water for use in the Home. Therefore, the cistern unambiguously falls within the meaning of "plumbing system" under the Exception as a matter of law.

For these reasons, the Court is not persuaded that any clear error or manifest injustice warrants reconsideration of its Order.[8] Summary judgment in Plaintiffs' favor

---

[8] Because the Court finds that Amica fails to establish clear error or manifest injustice with respect to the Court's interpretation and application of the Exception, it does not reach Amica's other arguments—all of which rely on the threshold conclusion that the Exception does not apply to water overflowing the cistern. *See, e.g.*, [Doc. 86 at 11–12

remains appropriate as to the coverage issues and the Court's express consideration of the record before it does not warrant a different outcome.  *See Wagner v. Am. Fam. Mut. Ins. Co.*, 569 F. App'x 574, 578–79 (10th Cir. 2014) (affirming district court's grant of summary judgment on coverage issues in insurance policy, concluding that "plain error did not occur" given the clarity of the policy and rejecting arguments that the court must consider new contract interpretation arguments either because the "preservation rule is more relaxed" as applied to legal arguments or because "a fundamental miscarriage of justice would occur"); *Lincoln Gen. Ins. Co. v. Smith*, 416 F. App'x 795, 798, 802–03 (10th Cir. 2011) (affirming district court's denial of defendants' motion for reconsideration of order granting summary judgment for plaintiff where defendants could have but did not raise arguments regarding application of an insurance policy until their motion for reconsideration).  Accordingly, the Motion for Reconsideration is **DENIED**.

Finally, the Court notes that Plaintiffs ask the Court to award attorneys' fees for the time spent preparing their Response to the Motion for Reconsideration.  [Doc. 90 at 16]. Plaintiffs may not seek relief through their Response to the instant Motion for Reconsideration.  *See* D.C.COLO.LCivR 7.1(d) ("A motion shall not be included in a response or reply to the original motion.  A motion shall be filed as a separate document.").  Accordingly, Plaintiffs' request is denied without prejudice, with leave to refile as a separate motion consistent with the Local Rules.

---

(water exclusion does not apply only to water escaped from natural sources); *id*. at 13 (water exclusion is subject to an anti-concurrent clause)].

## CONCLUSION

For the foregoing reasons, **IT IS ORDERED** that:

(1)   Defendant's Motion for Reconsideration of the Court's March 7, 2024 Opinion and Order on the Plaintiffs' Motion for Partial Summary Judgment [Doc. 86] is **DENIED**.


DATED:  October 16, 2024                    BY THE COURT:

                                            _____
                                            Nina Y. Wang
                                            United States District Judge